**UNITED STATES of America,**
**Appellee,**

**v.**

**Jean CAPECE, Appellant.**

**No. 165, Docket 26484.**

United States Court of Appeals Second Circuit.

Argued Dec. 15, 1960.

Decided March 15, 1961.

Herbert B. Greene, Asst. U. S. Atty., Southern District of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., and David R. Hyde, Asst. U. S. Atty., New York City, on the brief), for appellee.

Sidney W. Rothstein, Louis G. Greenfield, New York City, for appellant.

Before LUMBARD, Chief Judge, and MAGRUDER * and MOORE, Circuit Judges.

LUMBARD, Chief Judge.

Appellant, Jean Capece, was one of 15 defendants convicted of conspiracy to violate the federal narcotic laws, 21 U.S.C.A. §§ 173, 174, whose conviction was reviewed by this court and affirmed in United States v. Aviles, 274 F.2d 179, certiorari denied sub nom. Capece v. United States, 1960, 362 U.S. 974, 80 S.Ct. 1058, 4 L.Ed.2d 1010. Following denial of certiorari by the Supreme Court, Capece made two motions, both of which were denied by Judge Bicks who had conducted the conspiracy trial. Capece's motion for a new trial on the basis of newly discovered evidence was denied by Judge Bicks because Capece's counsel could have obtained the evidence for use at the trial and because, in any event, the evidence probably would not have altered the jury's verdict. Capece's second motion, seeking release on probation and suspension of her five-year sentence, was denied by Judge Bicks who ruled that sentences for violation of 21 U.S.C.A. §§

* Sitting by designation.

173 or 174 cannot be suspended. We agree with both of Judge Bicks' rulings.

### I

■ The gravamen of the new trial motion is an attack upon the truth of certain testimony given by Joseph Basile, the chief government witness against Capece. Basile, who was named as a member of the conspiracy but not as a defendant, testified that "on a couple of occasions" he paid for narcotics by wiring money to Joe Beck, the name by which the defendant Joseph DiPalermo, convicted along with Capece, was known to him. His testimony then continues as follows:

[By Arthur H. Christy, United States Attorney] "Q. When did you wire the money to him? Do you recall? A. On the two occasions I remember wiring money to him, on one occasion he had me wire the money to Jean Capece in care of Western Union, Grand Central Station."

\* \* \* \* \* \*

"Q. Well, you said a minute ago that he had you do this. Did you have a conversation with Joe Beck about it? A. Yes, I called him on the telephone and I told him that I had a thousand dollars for him and would it be all right if I would wire it to him since I didn't want to make a trip in the area and he told me, 'Yes, you could wire the money to Jean Capece in care of Western Union, Grand Central Station, New York City.'"

\* \* \* \* \*

"Q. Do you recall when you wired the money to Jean Capece at Joe Beck's instructions? A. I can only recall that it was the summer of 1956. I cannot place the month."

Neither Joseph DiPalermo nor Capece took the stand at trial to deny Basile's testimony.

On May 20, 1960 Capece's present counsel, her second new attorney since the trial, wrote the Western Union Company in New York City stating that he represented Capece and requested that the company search their files for a money order allegedly sent in the summer of 1956. He informed Western Union that "[t]he money order was purportedly in the sum of $1,000.00 and was allegedly sent to Jean Capece, care of Western Union, Grand Central Station. The sender was allegedly one, Joseph DiPalermo, or Joseph Basile."

Six days later, on May 26, Western Union sent the following telegram in response:

"In connection with your letter of May 20 and subsequent personal call, our auditor has searched his files from May 1, 1956 through September 1956 but cannot locate any money order for $1,000 in favor of Jean Capece New York City from Joseph DiPalermo or Joseph Basile also of New York City either paid or unpaid."

There is nothing before us which would indicate the subject matter or the date of the telephone conversation referred to in the telegram.

Whatever the value of this evidence, it is clear that Capece's counsel was remiss in not obtaining it during the trial. There was ample time to obtain the evidence during the trial.[1] And there was every reason to try to obtain more information from Basile so that his testimony could be disproved, if possible. If Capece did not receive the money order, she knew this at the time of trial.

It is difficult to imagine, moreover, that this "new" evidence would have had any

---

1. Capece's present counsel received a reply from Western Union six days after he sent the company a letter. Obviously her trial counsel could have obtained the same evidence long before the trial closed, for Basile testified to the money order on February 26, 1959 and the taking of evidence continued until March 20.

Capece's counsel was also remiss in failing to inquire from where Basile had wired the money and under what name he had sent it.

effect on the jury's consideration of Capece's case. The telegram does little, if anything, to discredit the testimony of Basile. From the evidence at trial it appears likely that any money order that was sent would have been sent from some place outside of New York City. Basile's expressed purpose for wiring the money was to avoid making a trip from Schenectady, where his activities were centered, into the New York City area. The telegram merely tells us that Western Union could find no money order in favor of Capece from Basile "of New York City." Moreover, the telegram says only that no money order was received from "Joseph Basile," though the record strongly suggests that Basile, who had jumped bail and was in hiding during the summer of 1956, and who had used at least ten different aliases in the past, and who was known as Joe Murphy to Capece's co-conspirators, Joey Beck and Johnny the Bug,[2] would not have sent $1,000 in payment for contraband by his given name. Furthermore, Basile's testimony relating to the money order was but one of several incidents involving Capece which were related by him[3] and he was but one of several witnesses who implicated Capece. There was damaging evidence against Capece from two other witnesses. A custom inspectress testified that she had found $9,000 in new one hundred dollar bills in Capece's undergarments when she, Joseph DiPalermo and one Salvatore Benanti returned from Cuba in November of 1956. Capece gave three different stories to account for this cash. Nelson Cantellops, who served as messenger for the conspiracy, testified that on one occasion he had turned over the proceeds of a sale to Aviles to Ralph Polizzano who then gave the money to Capece. It is altogether improbable that the evidence so belatedly discovered regarding a part of Basile's testimony could possibly have changed the verdict of the jury as to Capece.

The denial of a new trial, therefore, was quite proper. United States v. Forzano, 2 Cir., 1951, 190 F.2d 687; United States v. Walker, 2 Cir., 1952, 197 F.2d 287; United States v. Costello, 2 Cir., 1958, 255 F.2d 876; United States v. Flynn, D.C.S.D.N.Y.1955, 130 F.Supp. 412; Larrison v. United States, 7 Cir., 1928, 24 F.2d 82.

**II**

 Judge Bicks was also correct in holding that 26 U.S.C. § 7237(d) (1) deprived him of power to suspend Capece's five year sentence or release her on probation. We considered Capece's argument in United States v. Tom Toy, 2 Cir., 1960, 273 F.2d 625, 628 at fn. 8 and rejected it. Our rejection stands. Cf. Lathem v. United States, 5 Cir., 1958, 259 F.2d 393.

We affirm the orders of the district court.

---

2. Joey Beck and Johnny the Bug were the names by which Joseph DiPalermo and John DiPietro were known to Basile.

3. The other testimony given by Basile against Capece is set out fully in United States v. Aviles, 274 F.2d at page 187, where we do not even mention the money order.