**UNITED STATES of America, Plaintiff,**

v.

**John MENTESANA, Defendant.**

**No. 61-CR-150.**

United States District Court
E. D. New York.

March 16, 1962.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Jerome Ditore, Asst. U. S. Atty., of counsel, for plaintiff.

Jacques M. Schiffer, New York City, for defendant.

RAYFIEL, District Judge.

On April 27, 1961 a seven-count indictment was returned against John Mentesana, Charles Blaustein and Seymour Gersh, charging, *inter alia*, that on or about April 11th and April 12th, 1961 each of said defendants did "knowingly pass, utter and publish falsely made, forged and counterfeited obligations of the United States," to wit, United States Treasury Bearer Coupons in the aggregate amount of $192,960, knowing the said Coupons to have been falsely made, forged and counterfeited, in violation of Sections 472 and 2 of Title 18 United States Code.

On May 4 the defendants were arraigned, each entering a plea of not

guilty. On June 14 Gersh withdrew his plea, and entered a plea of guilty to Counts 3, 4 and 7 of the indictment. The trial began on June 19, and during its progress Blaustein withdrew his plea, and pleaded guilty to Counts 3, 5 and 6 of the indictment. On June 29, the jury returned its verdict, finding the defendant Mentesana guilty of Counts 1, 2, 3, 4 and 7 of the indictment, and not guilty of the remaining counts. He was remanded pending sentence. On July 13, after his motion for a new trial had been made and denied, Mentesana was sentenced to imprisonment for 10 years on each of Counts 1 and 2, and 5 years on each of Counts 3, 4 and 7, all sentences to run concurrently. On the same day he filed his notice of appeal. His request for bail pending appeal was denied and he was thereupon confined in Federal Detention Headquarters in New York City.

On August 1 he made application to the Court of Appeals for bail pending appeal. Chief Judge Lumbard denied the application, but granted him permission to file a typewritten brief and appendix on his appeal. Two days thereafter he renewed his application to the Court of Appeals for bail. Judge Moore denied the application and set the argument of the appeal down *for the week of September 25, 1961.* Judge Moore suggested that if the defendant came into possession of new facts in support thereof he might make application to the trial judge for bail pending appeal. On the very same day such an application was made by order to show cause. On August 25 it was denied.

On November 6 the defendant moved under Rule 33 of the Rules of Criminal Procedure, 18 U.S.C. (although not so denominated) for a new trial on the ground of newly discovered evidence. On November 8 I denied the application because of the provision in Rule 33, supra, that "if an appeal is pending the court (district) may grant the motion only on remand of the case." On November 27, upon motion duly made for such remand, the Court of Appeals ordered "that said motion be and it hereby is granted for the sole purpose of permitting the court below to pass upon the question of newly discovered evidence."

The defendant renewed his motion for a new trial and requested a hearing thereon. He asked, also, (1) for writs of *habeas corpus ad testificandum* providing for the appearance of Peter De Salvo, Thomas Palermo and Mac Gladding, who were expected to testify in behalf of the defendant, and who, respectively, were then in custody of the Sheriff of Nassau County, the Warden of the Brooklyn House of Detention for Men and the Warden of the Federal House of Detention in New York City, and (2) "for subpoenas and subpoenas duces tecum directed to certain employees of the Federal Government to require their attendance at said hearing as witnesses for the defendant or as Court witnesses in the interests of justice, and to bring with them government records of whatever and all nature as same relate to one, namely Ralph De Santis, a government witness at the original trial herein." Upon argument of the motion I granted a hearing, fixing a date therefor, and issued the aforementioned writs, but denied the request "for subpoenas and subpoenas duces tecum directed to certain employees of the Federal Government, etc." Counsel for the defendant then asked that I direct that the defendant be produced at the hearing for the purpose of testifying in his behalf. When counsel stated, in response to my question as to the nature of the defendant's proposed testimony, that it would be similar to that which would be offered by the three witnesses for whose attendance the aforementioned writs were to be issued, I denied the request.

The defendant's motion for a new trial is based largely, if not entirely, on his claims (1) that the testimony of De Santis at the aforementioned trial was chiefly responsible for his conviction, (2) that De Santis was "himself connected with illegal violations of the counterfeit money statutes of the United States and (was) an active participant in the possession, dealing and selling of counter-

feit money," (3) that he was unaware of those facts at the time of the trial, but has since learned of them from or through the aforementioned De Salvo, Palermo and Gladding, and (4) that if such information had then been available he could have used it in his cross-examination of De Santis, thereby impairing his credibility as a witness.

None of these claims has merit. As to point (1), De Santis' testimony on direct examination, far from being chiefly responsible for Mentesana's conviction, was of relatively minor importance. It involved his previous purchase of counterfeit money from Mentesana, and was offered for the sole purpose of establishing intent, as to which fact the jury was duly instructed. He had no knowledge of, and did and could not testify to, the facts involved in the charges made in the indictment.

As to point (2)—that De Santis had been involved in violations of statutes relating to counterfeiting—that fact was established by his (De Santis') admission on *direct* examination when he referred to his aforementioned deal for the purchase of counterfeit money from Mentesana.

Points (3) and (4), to the effect that if he had been aware of that fact he could have used it in his cross examination of De Santis, and thereby impaired his credibility, can be answered as follows:— Mr. Schiffer, counsel for Mentesana, was not unaware of De Santis' previous dealings in counterfeit money, inasmuch as he appeared as his attorney on February 9, 1961, some four months prior to the instant trial, on a counterfeiting charge, and continued to represent him until the very moment De Santis was called as a witness in the instant case. Immediately after the latter was sworn a side-bar conference was requested by the Assistant United States Attorney in charge of the trial. The jury was excused, and a discussion ensued during which Mr. Schiffer strenuously objected to the calling of De Santis as a witness. At the close of the discussion the latter discharged Mr. Schiffer as his attorney in the case then pending against him, and waived his attorney-client privilege respecting any confidential information which Mr. Schiffer may have obtained from him.

De Santis' testimony on direct examination, limited to his purchase from Mentesana of $10,000 in counterfeit money for $1,500, consumes less than *eight* pages of the transcript of the trial. Mr. Schiffer then conducted an intensive, gruelling and frequently very bitter cross examination, obviously intended not merely to impeach his credibility, but also to humiliate him. No part of it was pertinent to De Santis' direct testimony. Virtually all of it apparently related to information obtained by him from De Santis during their attorney-client relationship. The cross examination consumes *ninety* pages of the record and discloses that Mr. Schiffer, a very experienced and competent lawyer, used all the skill he could command to discredit De Santis. As a result he obtained many admissions from him respecting previous illegal acts and other practices reflecting unfavorably upon De Santis, all of which must have been considered by the jury in evaluating his testimony.

Despite the important part Palermo played in the incident hereinafter referred to, Mr. Schiffer chose not to use him as a witness at the hearing, calling only De Salvo and Gladding. Both have extensive criminal records.

De Salvo's testimony, in brief, involved a conversation which he and Palermo had with De Santis *on or about July 31, 1961* respecting the proposed purchase by the latter from Palermo of some 300 forged postal money orders. Since the incident took place more than a month after Mentesana's conviction it is obvious that evidence thereof did not exist at the time of the trial. Gladding testified, in substance, that on several occasions he purchased counterfeit money from De Santis. Assuming that the evidence offered by Gladding *was* newly discovered, and that it was not available at the trial despite a diligent effort to obtain it, it is not material to the issues in the case, De Santis'

testimony having been offered, as hereinabove stated, only for the purpose of establishing intent, and not as proof of the commission of the crime charged.

Assuming, also, that the De Salvo testimony were existent, and together with the Gladding testimony, available at the trial, it was minimal in value in the light of the extensive evidence of De Santis' background developed during his cross examination.

There is no merit in the defendant's implied claim that the testimony of Secret Service Agents and the examination of their books and records (demanded by him and denied by the Court) would have established that De Santis lied when he stated that he had met no Secret Service Agents prior to the Fall of 1960. Even if his claim were valid, that proof, too, would have been infinitesimal, and would hardly have lessened, much less destroyed, the value of De Santis' testimony.

In a motion for a new trial on the ground of newly discovered evidence the following requirements must be met:—

(1) it must appear that the evidence is really newly discovered,

(2) facts must be shown from which diligence may be inferred,

(3) the evidence must not be merely cumulative or impeaching,

(4) the evidence must be material to the issues involved in the case, and

(5) the evidence must be such as would on a new trial, probably result in an acquittal. Pitts v. United States, 9 Cir., 263 F.2d 808, cert. denied 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535; United States v. Capece, 2 Cir., 287 F.2d 537.

None of requirements (3), (4) and (5) has been met. As to (5), I have no doubt that the newly discovered evidence would not have affected the result of the trial. The evidence against Mentesana offered by the Government was overwhelming, particularly the testimony of co-defendant Seymour Gersh, who testified convincingly and in great detail of Mentesana's participation in the events of April 11 and April 12, 1961.

The defendant, in his brief, makes many wholly unsubstantiated charges against the Assistant United States Attorney who conducted the trial of the case and the Secret Service Agents who testified therein. These charges are entirely unrelated to the issues raised in the motion, and, hence, I have not considered them.

Accordingly, the motion for a new trial is denied.

Settle order on notice.