**UNITED STATES of America,**

v.

**Edmund C. BARBERA, Defendant.**

United States District Court
S. D. New York.

Jan. 30, 1963.

Vincent L. Broderick, U. S. Atty., for the S. D. New York for the United States. T. F. Gilroy Daly, Asst. U. S. Atty., of counsel.

Edward S. Friedland, New York City, for defendant Edmund C. Barbera.

FREDERICK van PELT BRYAN, District Judge.

Defendant Barbera was convicted by a jury on two counts of an indictment charging him with possession and concealment with intent to defraud of some $75,000 worth of counterfeit $20 Federal Reserve notes and with conspiring with others named in the indictment to commit this substantive crime in violation of 18 U.S.C. §§ 472, 473.

His motions for judgment of acquittal, pursuant to Rule 29, F.R.Cr.P., having been denied, he now moves, pursuant to Rule 33 for a new trial on the ground of newly discovered evidence and has renewed his earlier motion for a new trial on the ground that the Government had failed during the course of the trial to make the witness Gray available to the defense.

## I.

### The motion based on newly discovered evidence.

■ It is well settled that a party seeking a new trial on the grounds of newly discovered evidence must satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that the failure to produce the evidence at the trial was not due to lack of diligence on defendant's part; (3) that the evidence is so material that it would probably produce a different verdict if a new trial was granted; (4) that the evidence is not cumulative only, i. e., speaking to facts as to which evidence was adduced at the trial; and (5) that the object of the evidence is not merely to impeach the character or credibility of a witness. United States v. On Lee, 201 F.2d 722 (2 Cir., 1953), cert. den. 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953); Ferina v. United States, 302 F.2d 95 (8 Cir., 1962), cert. denied 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed. 2d 59 (1962); Gallegos v. United States, 295 F.2d 879 (9 Cir., 1961), cert. denied 368 U.S. 988, 82 S.Ct. 604, 7 L.Ed.2d 526 (1962); Johnson v. United States, 32 F.2d 127 (8 Cir., 1929); United States v. Mentesana, 203 F.Supp. 63 (E.D.N.Y. 1962), aff'd 305 F.2d 214 (2 Cir., 1962); United States v. Massoulis, 203 F.Supp. 114 (S.D.N.Y.1962); United States v. Stahls, 194 F.Supp. 849 (S.D.Indiana, 1961).

Upon the motion here the evidence upon which defendant relies consists of: (1) an affidavit by one Dave Miller as to certain dealings he had with the co-defendant and witness Max Friedman, and the co-defendant Mischa Weisberg, and certain conversations that he had with them subsequent to the arrests in this case, and (2) the testimony of Chester Gray, the Government informer who was produced by the Government after the conclusion of the trial, and who testified before me at a hearing on this motion.

There is also before me a letter from Irwin D. Strauss, Esq., who represented defendant Barbera before trial, who was present during part of the trial, and who claims that he had certain conversations with Barbera concerning his prospective meeting with Evangelista in Newark on June 27, 1962.

As to the statements in the affidavit of Dave Miller, there is no showing before me that this evidence was newly discovered, or that it could not have been discovered by the defendant in the exercise of reasonable diligence during the course of the trial. It therefore cannot be considered on this motion. United States v. Costello, 255 F.2d 876 (2 Cir., 1958), cert. den. 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958); United States v. Forzano, 190 F.2d 687 (2 Cir., 1951); Ferina v. United States, supra.

As to the material contained in the letter of Irwin B. Strauss, which will be made a part of this record, Strauss actually represented Barbera during the pre-trial proceedings in this case and was present in my chambers during a conference concerning the date of trial. He also was present in the courtroom during at least part of the trial. Even if his unverified letter could rise to the dignity of proof which might be considered on this application, it is plain that any evidence which Strauss might supply was not newly discovered and in fact was available to defendant had reasonable diligence been exercised. It is significant, moreover, that when Barbera took the stand he did not mention any such conversations or arrangements with Strauss as are referred to in the Strauss letter.

Finally, as to the testimony of Chester Gray taken before me at a hearing on this motion. As to the transactions charged in the indictment as limited by the bill of particulars, Gray's testimony would have been of no aid to defendant, and, in fact, tended to confirm the testimony of the co-defendant Friedman and various of the agents who testified for the Government. In this respect it was cumulative, but cumulative in favor of the Government rather than the defendant and plainly could not have aided the defendant.

Gray also testified with respect to the part the co-defendant witness Friedman played in a Canadian transaction in counterfeit money in which he and the co-defendant Weisberg were involved. No claim was made by the Government at the trial that Barbera had anything to do with the Canadian transaction, nor is there any evidence to that effect.

The Canadian transaction was raised upon Friedman's cross-examination in an effort to discredit him. It was admitted only for that purpose.

While admitting that he knew of Canadian negotiations Friedman originally denied that he himself had had any part in the transaction. It later developed, after the defendant Barbera had been permitted to inquire at length as to what was contained in confidential records of the Secret Service not related to the facts charged in the indictment, that Friedman had sworn falsely with respect to his part in the Canadian transaction. Friedman then was recalled to the stand and admitted that he had sworn falsely. Defense counsel was thus successful in impeaching Friedman and the fact that Friedman had made false statements under oath with regard to the Canadian transaction in an attempt to protect himself from feared further prosecution was before the jury. The jury was charged that Friedman had admitted lying under oath, that they could take this fact into account in evaluating his testimony; and that in the light of this they were entitled to disbelieve all or any part of his testimony if they saw fit.

The testimony of Gray which further contradicted Friedman's statements as to the Canadian transaction, was, for the purpose of this trial, merely further impeachment of Friedman and cumulative impeachment at that, going to the extent of his involvement in that deal. For this reason alone it does not furnish the basis for granting a new trial. See cases cited above.

In any event, it is clear to me that the Gray testimony would not have added materially to such impeachment of Friedman as had already been accomplished by his own admission that he had sworn falsely as to his involvement in the Canadian transaction. Under these cir-

cumstances it cannot be said that this testimony was so material that it would probably produce a different verdict if a new trial were granted. See United States v. Nigro, 253 F.2d 587 (3 Cir., 1958); United States v. Fassoulis, supra.

■ The defendant has failed to establish the grounds for granting a new trial and his motion for a new trial is denied.

## II.

*Defendant's renewed motion for a new trial on the ground of the failure of the Government to make the witness Gray available.*

Early in the trial there was testimony that Friedman and Weisberg had talked to one Chester Gray about the sale of counterfeit money and that Gray was in fact a Government informer who was keeping in touch with the Secret Service on the subject.

Thus, this is not a case where the Government failed to disclose the identity of its informer. Cf. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) and cases cited there. Moreover, it is a fair inference that Gray's part in the transaction with Friedman and Weisberg was no surprise to the defendant but had been known to his counsel before the trial commenced.

During the course of the trial the defendant repeatedly asked the Government to produce Gray. The Government responded that Gray was not under their control, that they had had no contact with him for some time and that they did not know where he was. In fact, at the time of the trial Gray was under subpoena as a witness in a trial in the Federal Court in Houston, Texas. He did not appear there, and apparently could not be located. It was not until several weeks after the trial had been concluded that Gray turned up in Houston to testify at the trial there.

When the court was informed that Gray's whereabouts were known, at my direction the United States Attorney communicated with his counterpart in Houston to arrange for the production of Gray at a hearing before me on the motion for a new trial. I personally called Chief Judge Hannay of the United States District Court for the Southern District of Texas, who was presiding at the trial in Houston, and arranged with him that Gray should be released for forty-eight hours so that he might testify here, and then return to the trial at Houston. Gray was flown here at Government expense and, as previously indicated, testified before me as a witness called by the defendant.

I have already discussed the testimony of Gray relating to the actual subject matter of the trial.

In addition, Gray was questioned by counsel for the defendant as to his whereabouts during the course of the trial, and whether or not he was in touch with the Government during that period. It appears from his testimony that while he had been released on bail under an indictment in this court and was out on bail on appeal from a conviction in a federal court in Florida, he was not in touch with any Government representatives during the period of this trial, and that, in fact, his whereabouts were unknown to the Government.

■ The defendant has made no showing that the Government knew of Gray's whereabouts at the time of the trial or that the Government failed to give the defendant all of the information which it had in its possession as to where Gray might be.

In the light of this evidence it is unnecessary to go into the technical questions of the amount of control which the Government may or may not exercise over a defendant who is out on bail. Cf. Ex parte Salinger, 288 F. 752 (2 Cir., 1923); United States v. Scheiderman, 102 F.Supp. 52 (D.Cal.1951). For here, the testimony shows that in fact the Government did not have control over Gray, did not know where he was and could not have laid its hands on him. The fact is that it was necessary

to hold up a lengthy and complicated trial in Houston for these very reasons.

Under these circumstances it cannot be said that the Government failed in its duty to the defendant with respect to the witness Gray in any respect, or that the conduct of the Government concerning Gray in any respect violated the defendant's constitutional rights.

Moreover, as I have already pointed out, the testimony of Gray could not have affected the result of the trial but in the main was unfavorable to the defendant rather than helpful to him.

The defendant's renewed motion for a new trial on the ground of the failure of the Government to make the witness Gray available is denied.

It is so ordered.