14-4158-cr(L), 15-487-cr(Con), 15-643-cr(Con)
United States v. Fernandez, Reyes & Darge

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of May, two thousand sixteen.

PRESENT: ROBERT D. SACK,
REENA RAGGI,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

---------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                         Nos.    14-4158-cr(L)
                                                                          15-487-cr(Con)
                                                                          15-643-cr(Con)

JOE FERNANDEZ, ALBERTO REYES, AKA Zac, PATRICK H. DARGE,
*Defendants-Appellants*,

MANUEL ALADINO SUERO, JOSE GERMAN RODRIGUEZ-MORA, LUIS RIVERA,
*Defendants.*

---------------------------------------------------------------------

APPEARING FOR APPELLANTS:      ROBERT WILLIAM RAY, Fox Rothschild LLP, New York, New York, *for* Joe Fernandez.

1

B. ALAN SEIDLER, ESQ., New York, New York, *for* Alberto Reyes.

MATTHEW J. GALLUZZO, Galluzzo & Johnson LLP, New York, New York, *for* Patrick Darge.

APPEARING FOR APPELLEE:
JOHN CRONAN, Assistant United States Attorney (Russell Capone, Margaret Garnett, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from judgments of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments entered on October 22, 2014 (as to Joe Fernandez), February 13, 2015 (as to Alberto Reyes), and March 3, 2015 (as to Patrick Darge), are AFFIRMED.

Defendants Joe Fernandez, Alberto Reyes, and Patrick Darge appeal from convictions arising from their roles in the murders of Arturo Cuellar and Ildefonso Vivero Flores. Fernandez—who stands convicted after a jury trial of conspiracy to commit murder-for-hire, see 18 U.S.C. § 1958, and using a firearm to commit murder in the course of that conspiracy, see id. § 924(j)(1)–(2)—argues on appeal that (1) the evidence was insufficient to support his conspiracy conviction, and (2) the district court erred in denying him a new trial based on (a) the government's alleged Brady violation and (b) newly discovered evidence. Reyes—who pleaded guilty to two counts of

2

murder in the course of a narcotics offense, see 21 U.S.C. § 848(e)(1)(A), and substantive and conspiratorial murder-for-hire, see 18 U.S.C. § 1958(a)—contends that his below-Guidelines sentence of 25 years' imprisonment is unreasonable. Darge—who pleaded guilty to using a firearm to commit murder in the course of a drug trafficking conspiracy, see 18 U.S.C. § 924(j)(1)–(2), two counts of murder while engaging in a narcotics offense, see 21 U.S.C. § 848(e)(1)(A), and conspiracy to commit murder-for-hire, see 18 U.S.C. § 1958—similarly contends that his below-Guidelines sentence of 30 years' imprisonment is unreasonable. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Fernandez

    a.    Sufficiency Challenge

We review a sufficiency challenge de novo and must affirm the conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); accord United States v. Binday, 804 F.3d 558, 572 (2d Cir. 2015). In conducting such review, we are mindful that a conviction can be sustained on the basis of testimony from a single accomplice, so long as the testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt. See United States v. Diaz, 176 F.3d 52, 92 (2d Cir. 1999).

3

Here, Fernandez's confederate, Patrick Darge, testified that in February 2000, Alberto Reyes, Jose Rodriguez-Mora, and Manuel Suero—all members of Jeffrey Minaya's drug organization—solicited Darge to murder Minaya's drug suppliers, Cuellar and Flores, in exchange for $180,000. After Darge agreed, he recruited his cousin Fernandez to "watch [Darge's] back" while he was committing the murders, and Luis Rivera to serve as the getaway driver. Trial Tr. 270. Darge testified that Fernandez agreed to participate after Darge told Fernandez that he had been "hired to murder two guys," that he needed Fernandez to back him up, that Fernandez would have to bring his own gun, and that he would pay Fernandez $40,000. Id. at 276–77. Darge further testified that he and Fernandez executed the planned murders in the lobby of an apartment building on February 22, 2000, but that, after shooting the first victim in the head, Darge's gun jammed, at which point he ran out of the building while he heard other shots being fired. Fernandez returned to the getaway car several minutes later and, according to Darge, explained that he "had to make sure they were both dead." Id. at 332. Cuellar and Flores were subsequently found shot dead in the lobby. Later that same day, Reyes paid Darge the agreed-upon $180,000, $40,000 of which Darge in turn paid to Fernandez. The jury reasonably could have concluded from this testimony that Fernandez knowingly joined and participated in the charged conspiracy, and had the specific intent to commit murder-for-hire. See United States v. Valle, 807 F.3d 508, 515–16 (2d Cir. 2015) (explaining that to sustain conspiracy conviction, government must prove knowing joinder and participation in scheme, and specific intent to commit

4

underlying offense); United States v. Hardwick, 523 F.3d 94, 99–100 (2d Cir. 2008) (stating that § 1958 requires agreement to commit murder in exchange for another party's actual or promised payment, and defendant's intent for murder to be committed).

Fernandez argues that Darge's testimony was insufficient to sustain his conspiracy conviction because it was uncorroborated. This argument fails because any lack of corroboration "goes merely to the weight of the evidence, not to its sufficiency." United States v. Parker, 903 F.2d 91, 97 (2d Cir. 1990) (explaining that "weight of the evidence is a matter for argument to the jury, not a ground for reversal"). In any event, the record did corroborate Darge's testimony in several material respects: (1) both Reyes and Minaya testified that, in planning the murders, they understood that Darge and one of his cousins were going to kill Cuellar and Flores; (2) Reyes testified that, upon entering the apartment building lobby with Cuellar and Flores, he saw Darge and another man whom he did not recognize; (3) Darge's brother testified that, in 2011, Fernandez told him that he (Fernandez) participated in the murders with Darge, and discussed leaving the country to evade arrest for those crimes; and (4) Fernandez's prison cellmate, Yubel Mendez-Mendez, testified that Fernandez told Mendez that he (Fernandez) was incarcerated "due to the fact that he had participated with Patrick," i.e., Darge, Trial Tr. 706. Insofar as Fernandez's sufficiency challenge is based on Darge's alleged lack of credibility, his testimony was not incredible on its face and, therefore, we must defer to the jury's assessment of his credibility. See United States v. Parker, 903 F.2d at 97.

Accordingly, Fernandez's sufficiency challenge fails.

b.     Motion for a New Trial

Fernandez argues that the district court erred in denying his Fed. R. Crim. P. 33 motion for a new trial based on (1) the government's failure to make disclosures required by Brady v. Maryland, 373 U.S. 83 (1963);[1] and (2) newly discovered evidence. We review the district court's denial of such motions for abuse of discretion, see United States v. Brunshtein, 344 F.3d 91, 101 (2d Cir. 2003), which we do not identify here.

i.     Alleged *Brady* Violation

To establish a Brady violation, a defendant must show that (1) the evidence at issue is favorable to him because it is either exculpatory or impeaching, (2) the government suppressed that evidence, and (3) he was thereby prejudiced. See Strickler v. Greene, 527 U.S. 263, 281–82 (1999); accord United States v. Madori, 419 F.3d 159, 169 (2d Cir. 2005).

Here, Fernandez contends that the government violated Brady by failing to disclose notes of a proffer session in which Rivera denied involvement in the February 22, 2000 murders. Fernandez argues that he could have used this evidence to impeach Darge's testimony that Rivera was the getaway driver. We are not persuaded.

Review of the notes confirms the district court's observation that they do not reflect Rivera's unequivocal denial of a getaway driver role. Moreover, and in any event, Fernandez fails to show how the notes could have been "useful for impeachment," in the sense of "having the potential to alter the jury's assessment of the credibility of a

---

[1] The district court also denied Fernandez's subsequent motion for reconsideration of its conclusion that the alleged Brady violation did not warrant a new trial.

significant prosecution witness." United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998). Rivera was not called as a prosecution witness, and Fernandez does not contend that he would have called him as a defense witness if he had been aware of the proffer notes, much less that Rivera would have been willing to testify. See United States v. Fernandez, No. 10 Cr. 863(AKH), 2014 WL 7180225, at *3 (S.D.N.Y. Nov. 25, 2014) (observing that Rivera's Fifth Amendment rights "presumably . . . made him unavailable to be a witness for either party"); cf. Leka v. Portuondo, 257 F.3d 89, 106–07 (2d Cir. 2001) (concluding that failure to disclose nontestifying eyewitness's account of crime at odds with those of testifying witnesses violated Brady where "testimony at trial would have had seismic impact, both because of what he would have said and because his testimony would have furnished the defense with promising lines of inquiry for" cross-examination of other witnesses). United States v. Jackson, 345 F.3d 59 (2d Cir. 2003), on which Fernandez relies, is inapposite. There, this court made clear that "Brady and its progeny may require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant." Id. at 71 (emphasis added); see also United States v. Orena, 145 F.3d 551, 553 (2d Cir. 1998) (considering Brady claim that undisclosed material could have been used to impeach out-of-court co-conspirator statements admitted under Fed. R. Evid. 801(d)(2)(E)). Fernandez does not contend that the proffer notes could have been used to impeach any of Rivera's out-of-court statements admitted at trial.

Nor are we persuaded that the proffer notes could have usefully impeached

7

Darge's testimony. Rivera's inability to remember, in 2012, whether he participated in the February 2000 murders was not necessarily probative of Darge's credibility in testifying that Rivera was the getaway driver. Fernandez nevertheless submits that he could have asked Darge if he (Darge) "had heard or was aware that Rivera denied being the driver of the getaway car," Appellant Br. 28–29, but, even if Rivera's proffer statements could be so construed, he provides no basis to think that Darge had knowledge of those statements, necessarily precluding Fernandez from satisfying the prejudice prong of a Brady claim.

In these circumstances, we cannot conclude that the district court abused its discretion in denying Fernandez's Brady-based Rule 33 motion.

### ii. Newly Discovered Evidence

Fernandez also argues that newly discovered evidence in the form of his own October 13, 2011 Verizon Wireless telephone records warranted a new trial.[2] He submits that these records cast doubt on trial evidence indicating that, at an October 13, 2011 meeting set up by Christian Guzman at Fernandez's request, Fernandez told Darge's brother that he (Fernandez) committed the February 22, 2000 murders with Darge, and discussed leaving the country to evade arrest for those crimes. We do not

---

[2] In moving for this relief, Fernandez also requested a subpoena for all of his Verizon Wireless records and all of Christian Guzman's AT&T phone records, which the district court denied. Fernandez subsequently obtained a log of Guzman's AT&T text messages from October 13, 2011, and, again, moved for an order requiring release of the content of text messages from that day. Because that motion was filed during the pendency of this appeal, the district court appears to have deferred consideration of it. See Fed. R. Crim. P. 37(a)(1).

here decide what, if any, doubt the Verizon records cast on the prosecution evidence because we conclude, in any event, that the records cannot be deemed newly discovered evidence for purposes of a Rule 33 motion as, with "reasonable diligence," they "could have been discovered before or during the trial." United States v. Parse, 789 F.3d 83, 109 (2d Cir. 2015). The Verizon records that purportedly contradict AT&T records admitted at trial are Fernandez's own cellphone records from October 2011 and, thus, were presumably available to him in the exercise of reasonable diligence at his 2013 trial. As for the AT&T text message log, if Fernandez sent Guzman a text message on October 13, 2011, rather than calling him, that was known to Fernandez well before trial commenced, providing him ample opportunity to obtain these records beforehand. See United States v. Capece, 287 F.2d 537, 538 (2d Cir. 1961) (rejecting new trial motion based on purportedly impeaching Western Union records that did not show transfers testified to by cooperating witness because "[i]f [defendant] did not receive the money order, she knew this at the time of trial" and, therefore, had "ample time to obtain" Western Union records during trial).

Thus, the district court did not abuse its discretion in denying Fernandez a new trial based on newly discovered evidence.

2. Reyes's and Darge's Sentencing Challenges

We review Reyes's and Darge's sentences for "reasonableness," which is "a particularly deferential form of abuse-of-discretion review." United States v. Cavera,

9

550 F.3d 180, 187–88 & n.5 (2d Cir. 2008) (en banc); accord United States v. Broxmeyer, 699 F.3d 265, 278 (2d Cir. 2012).

a.    Reyes

Reyes argues that his 25-year prison sentence is disproportionate to the sentences imposed on other participants in the same murder-for-hire conspiracy. See 18 U.S.C. § 3553(a)(6). As an initial matter, although a district court may consider case-specific disparities, see United States v. Wills, 476 F.3d 103, 110 (2d Cir. 2007), § 3553(a)(6) does not require such consideration, see United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008); accord United States v. Ghailani, 733 F.3d 29, 55 (2d Cir. 2013). Where, as here, a district court does consider disparities among confederates, "the weight to be given such disparities, like the weight to be given any § 3553(a) factor, is a matter firmly committed to the discretion of the sentencing judge and is beyond our appellate review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." United States v. Florez, 447 F.3d 145, 158 (2d Cir. 2006) (internal quotation marks and brackets omitted); accord United States v. Messina, 806 F.3d 55, 66–67 (2d Cir. 2015).

In sentencing Reyes, the district court acknowledged that Minaya, the leader of the murder-for-hire conspiracy, was sentenced to 15 years' imprisonment, but explained that it would not use that sentence "as a precedent for everyone else" based on further consideration of the facts of this case. Reyes App'x 79. We will not disturb this determination regarding the appropriate weight to give to the disparity between Minaya's

and Reyes's sentences because we cannot conclude that Reyes's 25-year term of imprisonment sentence falls outside "the range of permissible decisions." United States v. Cavera, 550 F.3d at 189; see United States v. Florez, 447 F.3d at 158. The sentence reflected (1) a significant downward departure, pursuant to 18 U.S.C. § 3553(e), from the statutory minimum term of life imprisonment that Reyes faced for his § 1958 convictions, see United States v. Perez–Frias, 636 F.3d 39, 43 (2d Cir. 2011) (observing that it is "difficult to find that a below-Guidelines sentence is unreasonable"); and (2) the district judge's careful consideration of numerous factors particular to Reyes, including that he led the two murder victims to the shooters.[3] See 18 U.S.C. § 3553(a). In these circumstances, we cannot conclude that Reyes's 25-year sentence so shocks the conscience as to be substantively unreasonable. See United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009).

Accordingly, we identify no merit in Reyes's sentencing challenge.

b.  Darge

i.  Procedural Reasonableness

Darge submits that his 30-year prison sentence is infected with procedural error because the district court (1) erroneously referred to the Guidelines as mandatory, and (2) failed to specify whether it was relying on 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1 in

---

[3] Insofar as Reyes faults the district court for subsequently sentencing Manuel Suero to 28 years' imprisonment despite the fact that he did not cooperate with the government, the record belies Reyes's contention that Suero was just as culpable as Reyes. Although Suero planned the murders with Reyes, it was Reyes who led the victims to the shooters and, thus, bore equal or "almost equal" responsibility as the shooters for their deaths. Reyes App'x 77.

determining whether, and to what extent, to depart from the statutory minimum. Because Darge did not raise these procedural objections in the district court, we review them for plain error.  See United States v. Verkhoglyad, 516 F.3d 122, 128 (2d Cir. 2008); see also United States v. Marcus, 560 U.S. 258, 262 (2010) (stating that plain error requires showing of (1) error, (2) that is clear or obvious, (3) affecting substantial rights, and (4) calling into question fairness, integrity, or public reputation of judicial proceedings).

Darge's first argument merits little discussion because, although the Guidelines are advisory, see United States v. Booker, 543 U.S. 220 (2005), Darge faced a statutory mandatory minimum of life imprisonment under 18 U.S.C. § 1958.  In any event, the district court's significant downward departure from this mandatory minimum, upon the government's § 3553(e) motion, makes clear that the court did not misapprehend its sentencing authority.

Darge's complaint about the district court's failure to specify the basis for its departure is equally meritless.  Although the decision to depart from a statutory mandatory minimum and the maximum extent of such a departure may, under § 3553(e), be "based only on substantial assistance to the government," a district court may consider other factors in arriving at a final sentence.  United States v. Richardson, 521 F.3d 149, 159 (2d Cir. 2008); accord United States v. Williams, 551 F.3d 182, 186 (2d Cir. 2009). Here, the district court granted a § 3553(e) departure as to Darge's § 1958 conviction based on his substantial assistance to the government, and a § 5K1.1 departure as to his

convictions for crimes not carrying a mandatory minimum. Then, in arriving at a final sentence, the district judge carefully considered other relevant factors including, under 18 U.S.C. § 3553(a), the seriousness of Darge's offense and his personal characteristics. See United States v. Williams, 551 F.3d at 186–87 (explaining that, after deciding to depart pursuant to § 3553(e) and determining maximum extent of departure, court may consider § 3553(a) factors in arriving at final sentence). Insofar as Darge contends that the district court considered improper factors in determining the maximum extent of departure, he fails to demonstrate that any such error affected his substantial rights or calls into question the fairness, integrity or public reputation of judicial proceedings. See United States v. Marcus, 560 U.S. at 262. Thus, we identify no plain procedural error in the district court's departure determination.

### ii. Substantive Reasonableness

Darge's substantive challenge to his sentence also fails because his 30-year prison term cannot be said to fall outside "the range of permissible decisions" available to the district court. United States v. Cavera, 550 F.3d at 189; see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008) (observing that "broad range" of sentences can be substantively reasonable).

In urging otherwise, Darge faults the district court for not according more weight to his cooperation. We are not persuaded. Darge—who testified at Fernandez's trial to joining the murder-for-hire conspiracy as the primary shooter, soliciting others to participate, and shooting one of the victims dead—faced a statutory minimum term of life

13

imprisonment for his § 1958 conviction. Nevertheless, based on his assistance to the government, the district court granted him a § 3553(e) departure and, after careful consideration of that assistance, the nature of his involvement in the conspiracy, and his professed rehabilitation, sentenced him to 30 years. We cannot conclude that the district court abused its discretion in so weighing the sentencing factors. See United States v. Fernandez, 443 F.3d 19, 32 (2d Cir. 2006) (holding that appellate court generally will not second-guess weight district court assigns factors possibly relevant to sentencing).

Darge's disproportionality argument relative to confederates is also meritless. As discussed with respect to Reyes's sentence, where a district court considers disparities among confederates, "the weight to be given such disparities, like the weight to be given any § 3553(a) factor, is a matter firmly committed to the discretion of the sentencing judge and is beyond our appellate review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." United States v. Florez, 447 F.3d at 158 (internal quotation marks and brackets omitted). Because we cannot conclude that Darge's 30-year sentence is unreasonable, his disproportionality argument necessarily fails. Moreover, and in any event, Darge cannot demonstrate that his confederates who received equal or lesser sentences were similarly situated because Darge (1) was one of the shooters in the murder-for-hire scheme that took two lives, and (2) also pleaded guilty to the 1998 murder of Arturo Rizzetto in relation to an unrelated drug trafficking crime. See United States v. Fernandez, 443 F.3d at 32 (rejecting disparity challenge where defendant failed to show that confederate was "similarly situated").

14

Thus, to the extent Darge's challenge is substantive as well as procedural, it fails because the record does not permit us to conclude that this is one of those "exceptional cases" where the district court's below-Guidelines sentence falls outside of the range of permissible decisions.  United States v. Cavera, 550 F.3d at 189; see United States v. Perez–Frias, 636 F.3d at 43.

Accordingly, we reject Darge's sentencing challenge.

3.    Conclusion

We have considered defendants' remaining arguments and conclude that they are without merit.    We therefore AFFIRM the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court